IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

GRAHAM W. GILLIAM and          §
DIANE W. GILLIAM,              §
                               §
            Plaintiffs,        §
                               §
v.                             §          CIVIL ACTION NO. H-18-2698
                               §
JPMORGAN CHASE BANK, N.A.,     §
                               §
            Defendant.         §

## MEMORANDUM OPINION AND ORDER

Plaintiffs Graham W. Gilliam ("Mr. Gilliam") and Diane W. Gilliam ("Ms. Gilliam") (collectively, "Plaintiffs") filed suit against JPMorgan Chase Bank, N.A. ("JPMC") alleging that JPMC is improperly attempting to foreclose on their real property located at 5530 Tilbury Drive, Houston, Texas 77056 (the "Property").[1] Plaintiffs allege a number of claims against JPMC, including quiet title, violations of the Texas Debt Collection Act ("TDCA"), a violation of the Texas Property Code, and violations of the Real Estate Settlement Procedures Act ("RESPA"), among others.[2] Pending before the court are Defendant JPMorgan Chase Bank, N.A.'s Motion to Strike or, in the Alternative, Motion to Dismiss Plaintiffs'

---

[1] See Plaintiffs' Second Amended Complaint ("Complaint"), Docket Entry No. 21, pp. 4, 12-25.

[2] See id. at 12-25.

Second Amended Complaint for Failure to State a Claim[3] ("JPMC's Motion to Strike/Motion to Dismiss") (Docket Entry No. 22); Defendant JPMorgan Chase Bank, N.A.'s Motion for Summary Judgment ("JPMC's MSJ") (Docket Entry No. 30); JPMorgan Chase Bank, N.A.'s Motion to Strike or, Alternatively, Objections to the Affidavit of Diane Werlein Gilliam[4] ("JPMC's Motion to Strike/Objections to Gilliam Affidavit") (Docket Entry No. 35); and Plaintiffs' Motion to Strike Objections and Answers of Defendant JP Morgan Chase Bank, N.A. ("Plaintiffs' Motion to Strike") (Docket Entry No. 36).

## I. Factual and Procedural Background

On April 23, 2003, Ms. Gilliam executed a $499,875.00 Adjustable Rate Note (the "Note") with Washington Mutual Bank, FA (the "Original Lender") to purchase the Property.[5] The Note was secured by a Deed of Trust, which granted the Original Lender a lien on the Property with a power of sale.[6] Upon closing Ms. Gilliam signed an Escrow Account Notification and Agreement (the "Escrow Waiver"), in which she agreed that the Loan would be

---

[3]JPMC's Motion to Strike/Motion to Dismiss will be denied as moot because the court will grant JPMC's MSJ.

[4]JPMC's Motion to Strike/Objections to Gilliam Affidavit will be denied as moot. The court did not rely on the statements made in Ms. Gilliam's affidavit in ruling on JPMC's MSJ.

[5]See Note, Exhibit A-1 to Declaration in Support of Motion for Summary Judgment ("Moody Declaration"), Docket Entry No. 30-1, p. 9.

[6]See Deed of Trust, Exhibit B to JPMC's MSJ, Docket Entry No. 30-2, pp. 2, 11-12. The Note and Deed of Trust are referred to collectively herein as the "Loan."

established as a non-escrow loan and that she would pay all property taxes directly to the Harris County taxing authorities and all insurance payments directly to her insurer.[7]

JPMC obtained servicing rights to the Loan from the Federal Deposit Insurance Corporation ("FDIC") on September 25, 2008.[8] The Deed of Trust was assigned to JPMC by the FDIC on the Original Lender's behalf on June 24, 2014.[9] Deutsche Bank National Trust Co. as Trustee for WAMU 2007-FLEX1 Trust (the "Trustee") is the current owner of the Loan.[10] JPMC is the servicer tasked with enforcing the Loan on the Trustee's behalf.[11]

---

[7]See Escrow Wavier, Exhibit A-2 to Moody Declaration, Docket Entry No. 30-1, pp. 16-17.

[8]See Moody Declaration, Exhibit A to JPMC's MSJ, Docket Entry No. 30-1, p. 3 ¶ 5 ("Chase is the mortgage servicer for the Loan and it or Chase Home Finance LLC has been the mortgage servicer since September 25, 2008 when Chase obtained the servicing rights to the Loan from the Federal Deposit Insurance Corporation (FDIC), receiver of Washington Mutual Bank."); Corporate Assignment of Deed of Trust, Exhibit D to JPMC's MSJ, Docket Entry No. 30-3, p. 7 ("This Assignment is intended to further memorialize the transfer that occurred by operation of law on September 25, 2008 as authorized by Section 11(d)(2)(G)(i)(II) of the Federal Deposit Insurance Act, 12 U.S.C. § 1821(d)(2)(G)(i)(II).").

[9]See Corporate Assignment of Deed of Trust, Exhibit D to JPMC's MSJ, Docket Entry No. 30-3, p. 7.

[10]See Letter from Dean Cooper, Managing Director for Chase, to Ms. Gilliam [June 5, 2018], Exhibit A-15 to Moody Declaration, Docket Entry No. 30-1, p. 77.

[11]See id.; Moody Declaration, Exhibit A to JPMC's MSJ, Docket Entry No. 30-1, p. 3 ¶ 5 ("Chase is the mortgage servicer for the Loan and it or Chase Home Finance LLC has been the mortgage servicer since September 25, 2008 when Chase obtained the servicing rights to the Loan from the Federal Deposit Insurance Corporation (FDIC), receiver of Washington Mutual Bank.").

Mr. Gilliam contacted JPMC in early January of 2014 to inquire about establishing an escrow account for the Loan and having JPMC begin paying property taxes on Plaintiffs' behalf, starting with the 2013 tax bill due later that month.[12] JPMC sent a letter to Ms. Gilliam on January 14, 2014, informing her that JPMC created the requested escrow account.[13] JPMC timely paid Plaintiffs' 2013 property taxes.[14] On February 6, 2014, JPMC sent Ms. Gilliam an escrow analysis statement outlining the escrow shortage caused by JPMC's payment of Plaintiffs' 2013 property taxes.[15] JPMC and Ms. Gilliam agreed that the monthly payment on the Loan would be adjusted for 60 months to account for the shortage.[16] A monthly statement was sent to Ms. Gilliam confirming that the new amount

---

[12]See JPMC's MSJ, Docket Entry No. 30, p. 10 ¶ 5("On or about January 7 and 8, 2014, Plaintiff Graham Gilliam, who was an authorized third party on the Loan account, contacted JPMC to inquire about establishing an escrow account for the Loan and having JPMC pay the 2013 taxes that would be due on or before January 31, 2014.").

[13]See Letter from Chase to Ms. Gilliam [January 14, 2014], Exhibit A-3 to Moody Declaration, Docket Entry No. 30-1, p. 19.

[14]See Check from JPMC Payable to Harris County - Tax Collector [January 14, 2014], Exhibit E-1 to JPMC's MSJ, Docket Entry No. 30-3, p. 12.

[15]See Escrow: Taxes and Insurance Statement [February 6, 2014], Exhibit A-4 to Moody Declaration, Docket Entry No. 30-1, p. 21; JPMC's MSJ, Docket Entry No. 30, p. 10 ¶ 8 (specifying that the "escrow shortage" was caused by JPMC's payment of Plaintiffs' 2013 property taxes).

[16]Letter from Chase to Ms. Gilliam [February 6, 2014], Exhibit A-5 to Moody Declaration, Docket Entry No. 30-1, p. 26 ("We are responding to the recent request we received about your [Loan]. Please accept this as a confirmation that we have granted a 60-month spread of your current escrow shortage.").

due each month beginning March 1, 2014, would be $6,433.33 ($2,109.80 in principal and interest, and escrow of $4,323.53 to (1) collect the escrow shortage caused by JPMC's payment of Plaintiffs' 2013 property taxes and (2) to set aside the amount due for Plaintiffs' 2014 property taxes).[17] JPMC paid Plaintiffs' 2014 and 2015 property taxes in full.[18]

JPMC alleges that Plaintiffs defaulted on the Loan in July of 2016.[19] In November of 2016 Plaintiffs submitted a personal check and a business check to JPMC in the amounts of $29,171.12 and $7,292.78, both of which JPMC rejected because they were insufficient to bring the Loan current and were not certified funds.[20] JPMC paid the Property's 2016 property tax bill of $40,355.86 on Plaintiffs' behalf in December of 2016.[21] In March of 2017 Harris County tax authorities returned $31,588.99 to JPMC

---

[17]See Mortgage Loan Statement [February 10, 2014], Exhibit A-6 to Moody Declaration, Docket Entry No. 30-1, p. 28.

[18]See Check from JPMC Payable to Harris County - Tax Collector [December 18, 2014], Exhibit E-2 to JPMC's MSJ, Docket Entry No. 30-3, p. 15; Check from JPMC Payable to Harris County - Tax Collector [December 9, 2015], Exhibit E-3 to JPMC's MSJ, Docket Entry No. 30-3, p. 18.

[19]See JPMC's MSJ, Docket Entry No. 30, p. 11 ¶ 15.

[20]See Letter from JPMC to Ms. Gilliam [November 29, 2016], Exhibit A-8 to Moody Declaration, Docket Entry No. 30-1, pp. 54-56 ("We can't accept the funds you sent us listed in the table below because . . . [t]hey arent enough to bring your account up to date and they need to be sent as certified funds, like a money order or cashiers check.").

[21]See Check from JPMC Payable to Harris County - Tax Collector [December 30, 2016], Exhibit E-4 to JPMC's MSJ, Docket Entry No. 30-3, p. 21.

because Plaintiffs had already paid a portion of their 2016 property taxes.[22] In July of 2017 Ms. Gilliam sent another personal check to JPMC.[23] JPMC again rejected Ms. Gilliam's attempted payment because it was not enough to bring the Loan current and was not certified funds. In December of 2017 JPMC paid $27,625.00 in 2017 property taxes on Plaintiffs' behalf.[24] In February of 2018 Harris County refunded $23,470.00 to JPMC because Plaintiffs had already paid a portion of their 2017 property taxes directly to taxing authorities.[25]

On May 9, 2018, Plaintiffs sent JPMC a qualified written request notifying JPMC of alleged billing errors and attached another personal check for $51,092.41.[26] JPMC received Plaintiffs' Qualified Written Request on May 14, 2018.[27] JPMC sent letters to

---

[22]See 2016 Property Tax Refund Check, Exhibit E-7 to JPMC's MSJ, Docket Entry No. 30-3, p. 31.

[23]Letter from JPMC to Ms. Gilliam [August 9, 2017], Exhibit A-10 to Moody Declaration, Docket Entry No. 30-1, p. 64 ("We can't accept the funds you sent us listed in the table below because . . . [t]hey arent enough to bring your account up to date and they need to be sent as certified funds, like a money order or cashiers check.").

[24]See Check from JPMC Payable to Harris County - Tax Collector [December 13, 2017], Exhibit E-5 to JPMC's MSJ, Docket Entry No. 30-3, p. 24.

[25]See 2017 Property Tax Refund Check, Exhibit E-8 to JPMC's MSJ, Docket Entry No. 30-3, p. 33.

[26]See Notice of Dispute/RESPA Correction Demand ("Plaintiffs' Qualified Written Request"), Exhibit A-11 to Moody Declaration, Docket Entry No. 30-1, pp. 67-68.

[27]See id. at 67 (with JPMC's time stamp stating that the request was received May 14, 2018).

Ms. Gilliam on May 15, 2018, and May 17, 2018, acknowledging its receipt of Plaintiffs' Qualified Written Request.[28]  On June 1, 2018, JPMC returned the check attached to Plaintiffs' Qualified Written Request because it was insufficient to bring the Loan current and was not certified funds.[29]  On June 8, 2018, JPMC sent a letter to Plaintiffs notifying them that additional time was needed to respond to Plaintiffs' Qualified Written Request.[30]  JPMC responded to Plaintiffs' Qualified Written Request on June 11, 2018, with a determination that there was no error.[31]  JPMC informed Plaintiffs that while an escrow analysis performed in May of 2018 showed an overage of $76,246.49, the overage only existed in the event that Plaintiffs were current for the July 2018 payment.[32]  Because Plaintiffs defaulted on the Loan in July of 2016, JPMC informed them that JPMC would not release any escrow surplus until

---

[28]See Letter from JPMC to Ms. Glliam [May 15, 2018], Exhibit A-13 to Moody Declaration, Docket Entry No. 30-1, p. 73; Letter from JPMC to Ms. Gilliam [May 17, 2018], Exhibit A-14 to Moody Declaration, Docket Entry No. 30-1, p. 75.

[29]See Letter from JPMC to Ms. Gilliam [June 1, 2018], Exhibit A-12 to Moody Declaration, Docket Entry No. 30-1, p. 70.

[30]See Letter from JPMC to Ms. Gilliam [June 8, 2018], Exhibit A-16 to Moody Declaration, Docket Entry No. 30-1, p. 79 ("We need more time to review your request because we are still pending additional research to resolve your inquiry or request.  We'll have an answer or a status update for you by June 23, 2018.").

[31]See Letter from JPMC to Ms. Gilliam [June 11, 2018] ("JPMC's Response to Plaintiffs' Qualified Written Request"), Exhibit A-17 to Moody Declaration, Docket Entry No. 30-1, pp. 82-83.

[32]See id. at 83.

all past due payments were collected.[33]  The Loan currently remains due for the July 1, 2016, payment.[34]

On August 6, 2018, Plaintiffs filed their original complaint.[35] Plaintiffs most recently amended their complaint on November 21, 2018.[36]  JPMC paid Plaintiffs' 2018 property taxes in full on December 19, 2018.[37]  JPMC filed its Motion to Strike/Motion to Dismiss on December 4, 2018.[38]  JPMC filed its MSJ on March 14, 2019.[39]  Plaintiffs responded to JPMC's MSJ on April 4, 2019.[40]  JPMC replied to Plaintiff's Response on April 11, 2019.[41]  Plaintiffs filed their Motion to Strike on April 22, 2019.[42]  JPMC responded

---

[33]See id.

[34]See Moody Declaration, Exhibit A to JPMC's MSJ, Docket Entry No. 30-1, p. 5 ¶ 16.

[35]See Complaint for Damages, Restitution and Injunctive Relief, Docket Entry No. 1.

[36]See Complaint, Docket Entry No. 21.

[37]See Check from JPMC Payable to Harris County - Tax Collector [December 19, 2018], Exhibit E-6 to JPMC's MSJ, Docket Entry No. 30-3, p. 27.

[38]See JPMC's Motion to Strike/Motion to Dismiss, Docket Entry No. 22.

[39]See JPMC's MSJ, Docket Entry No. 30.

[40]See Plaintiffs' Response to Defendant's Motion for Summary Judgment ("Plaintiffs' Response to JPMC's MSJ"), Docket Entry No. 31.

[41]See Defendant JPMorgan Chase Bank, N.A.'s Reply in Support of its Motion for Summary Judgment ("JPMC's Reply in Support of MSJ"), Docket Entry No. 32.

[42]See Plaintiffs' Motion to Strike, Docket Entry No. 36.

to Plaintiffs' Motion to Strike on April 29, 2019.[43]  Plaintiffs
replied on May 4, 2019.[44]

## II.  JPMC's Motion for Summary Judgment

### A.  Summary Judgment Standard

Summary judgment is appropriate if the movant establishes that
there is no genuine dispute about any material fact and the movant
is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).
Disputes about material facts are genuine "if the evidence is such
that a reasonable jury could return a verdict for the nonmoving
party."  Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2510
(1986).  The moving party is entitled to judgment as a matter of
law if "the nonmoving party has failed to make a sufficient showing
on an essential element of her case with respect to which she has
the burden of proof."  Celotex Corp. v. Catrett, 106 S. Ct. 2548,
2552 (1986).

A party moving for summary judgment "must 'demonstrate the
absence of a genuine issue of material fact,' but need not negate
the elements of the nonmovant's case."  Little v. Liquid Air Corp.,
37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (quoting

---

[43]See JPMorgan Chase's Bank, N.A's Response in Opposition to
Plaintiff Graham Gilliam's Motion to Strike Objections and Answers
to Written Discovery ("JPMC's Response in Opposition to Plaintiffs'
Motion to Strike"), Docket Entry No. 38.

[44]See Plaintiffs' Reply to Defendant's Response in Opposition
to Motion to Strike Objections and Answers to Written Discovery,
Docket Entry No. 39.

Celotex, 106 S. Ct. at 2553). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." Id. If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. Id. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).

In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097, 2110 (2000). The court resolves factual controversies in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Little, 37 F.3d at 1075.

## B. Analysis

Plaintiffs assert claims against JPMC for (1) quiet title, (2) violations of the TDCA, (3) a violation of Texas Property Code § 5.065, (4) unjust enrichment, (5) conversion, (6) violations of RESPA, (7) fraud and deceit or negligence, and (8) breach of

-10-

contract.[45]  Plaintiffs also seek declarations from the court that their title is superior to that of JPMC and that JPMC's pre-foreclosure activities are wrongful.[46]  For the reasons explained below, JPMC is entitled to summary judgment on each of the claims in Plaintiffs' Complaint.

### 1.  Quiet Title (Second Cause of Action)

A suit to remove cloud or to quiet title exists "'to enable the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right.'"  Essex Crane Rental Corp. v. Carter, 371 S.W.3d 366, 388 (Tex. App. -- Houston [1st Dist.] 2012, pet. denied) (quoting Bell v. Ott, 606 S.W.2d 942, 952 (Tex. Civ. App. -- Waco 1980, writ ref'd n.r.e.)).  The plaintiff has the burden of proof to establish his superior equity and right to relief.  Id.  To do so "the plaintiff must show (1) an interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) the claim, although facially valid, is invalid or unenforceable." Vernon v. Perrien, 390 S.W.3d 47, 61-62 (Tex. App. -- El Paso 2012, no pet.) (citation omitted).  The plaintiff must recover on the strength of his own title, not on the weakness of the defendant's title.  Hurd v. BAC Home Loans Servicing, LP, 880 F. Supp. 2d 747, 767 (N.D. Tex. 2012); Ventura v. Wells Fargo Bank,

---

[45]See Complaint, Docket Entry No. 21, pp. 18-27.

[46]See id. at 17-18.

N.A., Civil Action No. 4:17-075-A, 2017 WL 1194370, at *2 (N.D. Tex. March 30, 2017; Martin v. Amerman, 133 S.W.3d 262, 265 (Tex. 2004) (citation omitted).

Plaintiffs allege that JPMC's claim to the Property is invalid and unenforceable. Plaintiffs do not challenge the validity of the Deed of Trust, only JPMC's right to enforce it. Plaintiffs contest the validity of the FDIC's assignment of the Original Lender's interest in the Deed of Trust to JPMC.[47] "[U]nder Texas law, facially valid assignments cannot be challenged for want of authority except by the defrauded assignor." Reinagel v. Deutsche Bank National Trust Co., 735 F.3d 220, 228 (5th Cir. 2013). Plaintiffs therefore lack standing to challenge the assignment to JPMC, or any other assignment of the Deed of Trust, because they are the borrowers and not the defrauded assignor.

Furthermore, the documents attached to JPMC's MSJ show that the Deed of Trust created a valid lien (of which the Trustee is the owner and JPMC is the servicer) that remains on the Property. JPMC claims no interest in the Loan other than the right to enforce it on the Trustee's behalf. Plaintiffs present no evidence demonstrating that the Loan is invalid. JPMC is therefore entitled to summary judgment on Plaintiffs' quiet title claim.

2. Violations of the TDCA (Third Cause of Action)

Plaintiffs' Complaint alleges that JPMC violated several provisions of the TDCA by: (1) "[t]hreatening to take action

---

[47]See Complaint, Docket Entry No. 21, p. 9 ¶¶ 29-31.

prohibited by law, specifically seeking to sell the Property at a foreclosure sale" in violation of § 392.301(a)(8) of the TDCA; (2) "[u]sing a fraudulent, deceptive, or misleading representation that misrepresent(s) the character, extent, or amount of a consumer debt" in violation of § 392.304(a)(8) of the TDCA; (3) "[m]isrepresenting the status and nature of the services rendered by the debt collector" in violation of § 392.304(a)(14) of the TDCA; and (4) "[u]sing other false representations or deceptive means to collect a debt" in violation of § 392.304(a)(19) of the TDCA.[48] For the reasons explained below, Plaintiffs have failed to present sufficient evidence to raise a genuine issue of material fact with respect to their TDCA claims. JPMC will therefore be granted summary judgment on Plaintiffs' cause of action for violations of the TDCA.

(a) Violation of § 392.301(a)(8)

Section 392.301(a)(8) prohibits a debt collector from "threatening to take an action prohibited by law." Tex. Fin. Code § 392.301(a)(8). Section 392.301(a) does not prevent a debt collector from "exercising or threatening to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings." Id. § 392.301(b)(3). As long as a debt collector has a contractual right to foreclose and the loan is in default, the debt collector does not violate § 392.301(a) by

---

[48]See id. at 19 ¶¶ 71.A-D.

-13-

initiating foreclosure proceedings regardless of whether pre-foreclosure notice requirements were met. <u>Rucker v. Bank of America, N.A.</u>, 806 F.3d 828, 831 (5th Cir. 2015).

Plaintiffs allege that JPMC's actions in proceeding with foreclosure violate the TDCA because JPMC lacks authority to foreclose.[49] JPMC has standing to foreclose because JPMC, as the last assignee of record of the Deed of Trust,[50] is a mortgagee on the Loan. <u>See</u> Tex. Prop. Code § 51.0001(4). The Deed of Trust has a power of sale provision allowing nonjudicial foreclosure.[51] JPMC has presented uncontradicted evidence that Plaintiffs are in default. JPMC's actions are therefore not in violation of § 392.301(a)(8) of the TDCA because JPMC has a contractual right to institute nonjudicial foreclosure proceedings under the Deed of Trust and Plaintiffs are in default.

(b) Violation of § 392.304(a)(8)

Section 392.304(a)(8) of the TDCA prohibits a debt collector from "misrepresenting the character, extent, or amount of a consumer debt. . . ." Tex. Fin. Code § 392.304(a)(8). Plaintiffs allege that JPMC "made significant misrepresentations about the status of the loan, the owner of the loan, and its alleged services

---

[49]<u>See id.</u> ¶ 71.A.

[50]<u>See</u> Corporate Assignment of Deed of Trust, Exhibit D to JPMC's MSJ, Docket Entry No. 30-3, p. 7.

[51]<u>See</u> Deed of Trust, Exhibit B to JPMC's MSJ, Docket Entry No. 30-2, p. 11 ¶ 23.

. . . ."[52]  JPMC is the last assignee of record and the mortgagee on the Loan.  JPMC has the right to enforce the Deed of Trust. There is no evidence that JPMC made any of the misrepresentations alleged by Plaintiffs.  Plaintiffs have therefore failed to raise a genuine issue of material fact with respect to whether JPMC violated § 392.304(a)(8).

### (c)  Violation of § 392.304(a)(14)

Section 392.304(a)(14) of the TDCA prohibits a debt collector from "representing falsely the status or nature of the services rendered by the debt collector or the debt collector's business." Tex. Fin. Code § 392.304(a)(14).  There is no evidence that JPMC misrepresented the services it performs for the Loan.  Plaintiffs have therefore failed to raise a genuine dispute of material fact regarding JPMC's alleged violation of § 392.304(a)(14).

### (d)  Violation of § 392.304(a)(19)

Section 392.304(a)(19) is a catch-all provision that prohibits a debt collector from using any false representation or deceptive means to collect a debt not specifically articulated elsewhere in the statute.  Tex. Fin. Code § 392.304(a)(19); Williams v. Wells Fargo Bank, N.A., 560 F. App'x 233, 240-41 (5th Cir. 2014).  "To violate the TDCA using a misrepresentation, the debt collector must have made an *affirmative statement* that was false or misleading."

---

[52]See Complaint, Docket Entry No. 21, p. 19 ¶ 73.

<u>Kruse v. Bank of New York Mellon,</u> 936 F. Supp. 2d 790, 792 (N.D. Tex. 2013) (emphasis in the original) (internal quotation marks and citations omitted); <u>see also Williams,</u> 560 F. App'x at 241.

Plaintiffs allege that JPMC made misrepresentations to Plaintiffs falling under § 392.304's catch-all provision. Plaintiffs have failed to present evidence identifying a specific, affirmative statement by JPMC that was false or misleading. JPMC is a mortgagee under Texas law and has the authority to foreclose under the Deed of Trust. Plaintiffs present no evidence that JPMC is not the mortgagee. There is no evidence that the amount due on the Loan alleged by JPMC is incorrect. Plaintiffs have failed to raise a genuine dispute of material fact regarding JPMC's alleged violation of § 392.304(a)(19).

### 3.   <u>Violation of Texas Property Code § 5.065 (Fourth Cause of Action)</u>

Section 5.065 is part of chapter 5, subchapter D of the Texas Property Code, which governs "executory contracts for conveyance." <u>See</u> Tex. Prop. Code §§ 5.061-85. "Subchapter D was enacted to protect purchasers who execute a contract for deed." <u>Weaks v. White,</u> 479 S.W.3d 432, 439 (Tex. App. -- Tyler 2015, pet. denied). "A contract for deed, unlike a typical secured transaction involving a deed of trust, is a financing arrangement that allows the seller to maintain title to the property until the buyer has paid for the property in full." <u>Morton v. Nguyen,</u> 412 S.W.3d 506, 509-10 (Tex. 2013).

Plaintiffs allege that JPMC violated § 5.065 of the Texas Property Code by failing to send Plaintiffs notices of default and intent to accelerate required by § 51.002(d).[53]  Section 5.065 of the Texas Property Code does not apply to the Loan.  When the Loan was executed, title to the Property was conveyed to Ms. Gilliam by a general warranty deed.[54]  Because the Original Lender did not retain title to the Property until after Plaintiffs made all required payments on the Loan, there was no executory contract.  Accordingly, JPMC is entitled to summary judgment on Plaintiffs' claim that JPMC violated Texas Property Code § 5.065.

### 4.  Unjust Enrichment (Fifth Cause of Action)

Texas courts recognize an independent cause of action for unjust enrichment.  See Pepi Corp. v. Galliford, 254 S.W.3d 457, 460 (Tex. App. -- Houston [1st Dist.] 2007, pet. denied) (citing HECI Exploration Co. v. Neel, 982 S.W.2d 881, 891 (Tex. 1998)).

---

[53]Section 51.002 of the Texas Property Code does not provide borrowers with a private right of action for a mortgagee's violation of pre-foreclosure requirements.  See Hill v. Wells Fargo Bank, N.A., Civil Action No. V-12-11, 2012 WL 2065377, at *7 (S.D. Tex. June 6, 2012).  A borrower's only remedy is to assert a cause of action for wrongful foreclosure based on the mortgagee's failure to give the notices required by § 51.002.  Id.  To state a claim for wrongful foreclosure under Texas law, the borrower must show that a foreclosure sale has occurred.  Id. at *8.  There has been no foreclosure sale of the Property.  Plaintiffs therefore cannot prevail on any claim that JPMC failed to send required notices of default and intent to accelerate.

[54]See General Warranty Deed With Vendor's Lien in Favor of a Third Party Lender, Exhibit C to JPMC's MSJ, Docket Entry No. 30-3, pp. 2-5.

"Unjust enrichment occurs when a person has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain." Eun Bok Lee v. Ho Chang Lee, 411 S.W.3d 95, 111 (Tex. App. -- Houston [1st Dist.] 2013, no pet.). "When a person has been unjustly enriched by the receipt of benefits in a manner not governed by contract, the law implies a contractual obligation upon that person to restore the benefits to the plaintiff." Id. A cause of action for "unjust enrichment is unavailable when a valid, express contract governing the subject matter of the dispute exists." See id. at 112 (citing Fortune Production Co. v. Conoco, Inc., 52 S.W.3d 671, 683-84 (Tex. 2000)).

Plaintiffs base their unjust enrichment claim on JPMC's alleged lack of authority to collect payments on the Loan.[55] Plaintiffs do not contest the validity of the Note or the Deed of Trust. A cause of action for unjust enrichment is not available to Plaintiffs because valid contracts (i.e., the Note and the Deed of

---

[55]Plaintiffs' unjust enrichment claim raises other issues, including alleged problems with securitization of the Loan, Real Estate Mortgage Investment Conduit (REMIC) violations, and JPMC's alleged failure to comply with a Pooling and Servicing Agreement. Plaintiffs acknowledge elsewhere in their Complaint that securitization is not an issue in this action. See Complaint, Docket Entry No. 21, p. 14 ¶ 44. Plaintiffs point to no law or facts suggesting that the WAMU 2001-Flex1 Trust's REMIC status impacts Plaintiffs' obligations under the Loan. Moreover, Plaintiffs lack standing to challenge a breach of a pooling and servicing agreement to which they are not parties. See Reinagel, 735 F.2d at 228 (rejecting borrowers' claims premised on breach of a pooling and servicing agreement). The court is therefore not persuaded that the other issues raised in Plaintiffs' unjust enrichment claim entitle Plaintiffs to relief.

Trust) govern their rights and obligations under the Loan. Plaintiffs present no evidence that JPMC lacks authority to collect payments on the Loan. JPMC is therefore entitled to summary judgment on Plaintiffs' unjust enrichment claim.

### 5. Conversion (Sixth Cause of Action)

"To succeed on a conversion claim under Texas law, the plaintiff must prove that '(1) he legally possessed the property or was entitled to it; (2) the defendant wrongfully exercised dominion and control over the property, excluding the plaintiff; (3) the plaintiff demanded the property's return; and (4) the defendant refused.'" United States v. Boardwalk Motor Sports, Ltd., 692 F.3d 378, 381 (5th Cir. 2012) (citing Arthur W. Tifford, PA v. Tandem Energy Corp., 562 F.3d 699, 705 (5th Cir. 2009)). "Conversion claims for money must meet additional requirements." Id. "Actions for conversion of money are available in Texas only where money is (1) delivered for safekeeping; (2) intended to be kept segregated; (3) substantially in the form in which it is received or an intact fund; and (4) not the subject of a title claim by the keeper." In re TXNB Internal Case, 483 F.3d 292, 308 (5th Cir. 2007) (internal quotation marks omitted).

Plaintiffs allege that JPMC "interfered with Plaintiffs' right to property in the form of loan payments to [JPMC]."[56] Plaintiffs allege that JPMC was not authorized to collect and retain Loan

---

[56]See Complaint, Docket Entry No. 21, p. 23 ¶ 93.

-19-

payments from Plaintiffs.[57] JPMC is the servicer on the Loan, and under Texas law mortgage servicers have the right to collect loan payments. See Tex. Prop. Code § 51.0001(3) (defining a "mortgage servicer" as "the last person to whom a mortgagor has been instructed by the current mortgagee to send payments for the debt secured by a security instrument"). Plaintiffs have presented no evidence that JPMC is not the mortgage servicer on the Loan. Plaintiffs plead no additional facts supporting a conversion claim under Texas law. JPMC is therefore entitled to summary judgment on Plaintiffs' conversion claim.

6. <u>Violations of RESPA (Seventh Cause of Action)</u>

RESPA requires a loan servicer to respond by certain deadlines to a "qualified written request" from a borrower. See 12 U.S.C. § 2605(e). For purposes of RESPA, a "qualified written request" is defined as "a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer," that identifies, specifically or in a way that enables the loan servicer to identify, the name and account at issue, and that "includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." See id. § 2605(e)(1)(B). Under RESPA a servicer is required to respond to a qualified

---

[57]<u>See id.</u> at ¶ 94.

written request within 30 days of receiving it. <u>See</u> 12 U.S.C. § 2605(e)(2). After conducting an investigation, the servicer must respond in writing to the borrower explaining either that the error has been corrected or that no error occurred and an explanation for that determination. <u>See id.</u>

To recover against a lender or servicer that fails to comply with RESPA's requirements, the borrower must allege either (1) that actual damages resulted from the RESPA violations or (2) that the defendant engaged in a "pattern or practice of noncompliance" entitling the Plaintiff to up to $2,000 in statutory damages. 12 U.S.C. § 2605(f)(1)(A)-(B); <u>Oden v. JPMorgan Chase Bank, N.A.,</u> Civil Action No. H-12-0861, 2012 WL 1610782, at *2 (S.D. Tex. May 8, 2012); <u>Gipson v. Deutsche Bank National Trust Company,</u> Civil Action No. 3:13-4820-L(BH), 2015 WL 11120538, at *24 (N.D. Tex. Oct. 27, 2015).

Plaintiffs claim throughout their Complaint that there was an escrow surplus of $76,246.49 and that JPMC overbilled Plaintiffs.[58] On May 9, 2018, Plaintiffs sent JPMC a Qualified Written Request arguing that no payments for the escrow component of the monthly payment were due because a recent escrow analysis showed a positive escrow balance.[59] JPMC received Plaintiffs' Qualified Written

---

[58]<u>See</u> Complaint, Docket Entry No. 21, ¶ 13.

[59]Plaintiffs' Qualified Written Request, Exhibit A-11 to Moody Declaration, Docket Entry No. 30-1, pp. 67-68.

Request on May 14, 2019.[60] JPMC sent letters to Ms. Gilliam acknowledging receipt of Plaintiffs' Qualified Written Request on May 15, 2018, and May 17, 2018.[61] JPMC wrote to Plaintiffs informing them that more time was needed to investigate their request on June 8, 2018.[62] JPMC sent a written resolution to Plaintiffs' Qualified Written Request on June 11, 2018, explaining that its investigation determined that there was no error.[63] JPMC complied with RESPA's requirements by timely responding to Plaintiffs' Qualified Written Request with the required information.

JPMC timely responded to Plaintiffs' Qualified Written Request, and there is no evidence that the amount JPMC claims is owed on the Loan is in error. Plaintiffs have also failed to present evidence showing that they suffered actual damages from JPMC's conduct or that JPMC's conduct was part of a "pattern or

---

[60]See id. at 67 (listing the Chase Customer Request Management Receipt Date as May 14, 2018).

[61]See Letter from JPMC to Ms. Gilliam [May 15, 2018], Exhibit A-13 to Moody Declaration, Docket Entry No. 30-1, p. 73; Letter from JPMC to Ms. Gilliam [May 17, 2018], Exhibit A-14 to Moody Declaration, Docket Entry No. 30-1, p. 75.

[62]See Letter from JPMC to Ms. Gilliam [June 8, 2018], Exhibit A-16 to Moody Declaration, Docket Entry No. 30-1, p. 79 ("We need more time to review your request because we are still pending additional research to resolve your inquiry or request. We'll have an answer or a status update for you by June 23, 2018.").

[63]See JPMC's Response to Plaintiffs' Qualified Written Request, Exhibit A-17 to Moody Declaration, Docket Entry No. 30-1, pp. 82-83.

practice of noncompliance" with RESPA. JPMC is therefore entitled to summary judgment on Plaintiffs' RESPA claims.

7.   <u>Fraud and Deceit or Negligence (Eighth Cause of Action)</u>

Plaintiffs assert a combined fraud and negligence claim wherein they allege that JPMC executed a fraudulent assignment of the Loan and that JPMC misrepresented its authority to foreclose on the Deed of Trust.[64]   Plaintiffs present no evidence supporting these allegations.   The documents submitted by JPMC show that JPMC is the mortgagee on the Loan and that as the Loan's servicer, JPMC has authority to collect payments on the Loan.   As the mortgagee, JPMC also has authority to initiate foreclosure proceedings in the event of a borrower default.   Plaintiffs have therefore failed to raise a genuine dispute of material fact with regard to their fraud and negligence claim.

Under its cause of action for "fraud and deceit or negligence," Plaintiffs also allege that JPMC violated § 12.002 of the Texas Civil Practice and Remedies Code.[65]   To recover under § 12.002 of the Texas Civil Practice and Remedies Code, a plaintiff must show that the defendant "(1) made, presented, or used a document with knowledge that it was a fraudulent lien or claim against real or personal property or an interest in real or personal property, (2) intended that the document be given legal

---

[64]<u>See</u> Complaint, Docket Entry No. 21, pp. 25-26 ¶¶ 104-08.

[65]<u>See id.</u> at 25 ¶¶ 104-05.

-23-

effect, and (3) intended to cause the plaintiff physical injury, financial injury, or mental anguish." <u>Golden v. Wells Fargo Bank, N.A.</u>, 557 F. App'x 323, 326-27 (5th Cir. 2014) (internal quotation marks omitted). Plaintiffs allege that the assignment to JPMC was a fraudulent lien. An assignment of a deed of trust is not actionable under § 12.002 because an assignment does not create a lien. <u>See Ferguson v. Bank of New York Mellon Corp.</u>, Civil Action No. H-13-279, 2014 WL 2815487, at *5 (S.D. Tex. June 23, 2014). Moreover, Plaintiffs have presented no evidence that the assignment to JPMC was fraudulent.

For these reasons, JPMC is entitled to summary judgment on all the claims pled by Plaintiffs under their cause of action for "fraud and deceit or negligence."

### 8. <u>Breach of Contract (Ninth Cause of Action)</u>

"Under Texas law, a plaintiff alleging a breach of contract must show '(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach.'" <u>Villarreal v. Wells Fargo Bank, N.A.</u>, 814 F.3d 763, 767 (5th Cir. 2016) (quoting <u>Wright v. Christian & Smith</u>, 950 S.W.2d 411, 412 (Tex. App. -- Houston [1st Dist.] 1997, no writ).

Plaintiffs' breach of contract claim against JPMC is based on the allegation that JPMC breached the Deed of Trust by recording a

"fraudulent and forged" assignment.[66] As discussed above, Plaintiffs
lack standing to challenge the assignment to JPMC (or any other
assignment of the Loan) because Plaintiffs are borrowers and not the
allegedly defrauded assignors.  Moreover, Plaintiffs have presented
no evidence showing that the assignment to JPMC was forged,
fraudulent, or otherwise invalid.  JPMC is therefore entitled to
summary judgment on Plaintiffs' breach of contract claim.

### III.  **Plaintiffs' Motion to Strike**

Plaintiffs' Motion to Strike challenges the timeliness of
JPMC's discovery responses.  The parties do not dispute that the
deadline to serve responses to written discovery was February 5,
2019.[67]  JPMC served its responses to Plaintiffs' requests for
production on January 31, 2019.[68]  JPMC served its objections and
answers to Plaintiffs' interrogatories on February 5, 2019.[69]  JPMC

---

[66]See Complaint, Docket Entry No. 21, p. 27 ¶¶ 110-13.

[67]See JPMC's Response in Opposition to Plaintiffs' Motion to
Strike, Docket Entry No. 38, p. 2 ¶ 5; Plaintiffs' Motion to
Strike, Docket Entry No. 36, p. 1 ¶ 4.

[68]See Cover Letter and Proof of Service for [JPMC]'s Responses
and Objections to Plaintiffs' First Set of Requests for Admission,
and Defendant's Responses and Objections to Plaintiffs' First
Request for Production, Exhibit A-2 to Affidavit of Rachel Lee
Hytken ("Hytken Affidavit"), Docket Entry No. 38-1, pp. 8-9.

[69]See Cover Letter and Proof of Service for Defendants'
Objections and Answers to Plaintiffs' First Set of Interrogatories,
Exhibit A-3 to Hytken Affidavit, Docket Entry No. 38-1, pp. 10-11.

supplemented its interrogatory objections and answers with a verification page on March 13, 2019.[70]

JPMC responded to Plaintiffs' requests for production before the February 5th deadline. There is no evidence that JPMC's responses to Plaintiffs' requests for production were untimely. The court will therefore deny Plaintiffs' Motion to Strike with respect to JPMC's responses to Plaintiffs' requests for production.

Plaintiffs argue that JPMC's responses to its interrogatories were untimely because although JPMC submitted its interrogatory responses before the February 5th deadline, JPMC did not submit proof of verification until after the deadline.[71] Rule 33(b) of the Federal Rules of Civil Procedure provides that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). JPMC did not submit its verification that the interrogatories were made under oath until after the February 5th deadline. However, any delay in receiving such verification did not prejudice Plaintiffs. Plaintiffs were in possession of JPMC's substantive responses before the deadline and JPMC corrected the

---

[70]See Defendant's Objections and Answers to Plaintiffs' First Set of Interrogatories [Supplemented with Verification], Exhibit B to Plaintiffs' Motion to Strike, Docket Entry No. 36-3, p. 12.

[71]See Plaintiffs' Motion to Strike, Docket Entry No. 36, p. 1 (explaining that "On February 5, 2019, Defendant did not respond with timely and verified responses as required" but instead "delivered unresponsive answers that were not verified").

error and submitted verification prior to filing its Motion for Summary Judgment. The court will therefore deny Plaintiffs' Motion to Strike because Plaintiffs are now in possession of JPMC's verified interrogatory responses and objections.

## IV. Conclusion and Order

For the reasons explained above, Plaintiffs have failed to present evidence supporting their claims for relief against JPMC. JPMC has satisfied its burden to show that there are no issues of material fact with respect to Plaintiffs' claims and that JPMC is entitled to summary judgment on the claims in Plaintiffs' Complaint.

Plaintiffs also seek declaratory relief in connection with their substantive claims.[72] When all substantive underlying claims have been dismissed, a claim for declaratory judgment cannot survive. <u>Ayers v. Aurora Loan Services, LLC,</u> 787 F. Supp. 2d 451, 457 (E.D. Tex. 2011). Because the court will grant summary judgment for JPMC on Plaintiffs' substantive claims, the court will also grant summary judgment on Plaintiffs' claim for declaratory relief.

Defendant JPMorgan Chase Bank, N.A.'s Motion for Summary Judgment (Docket Entry No. 30) is therefore **GRANTED**. Defendant

---

[72]<u>See</u> Complaint, Docket Entry No. 21, pp. 17-18 ¶¶ 60-65.

JPMorgan Chase Bank, N.A.'s Motion to Strike or, in the Alternative, Motion to Dismiss Plaintiffs' Second Amended Complaint for Failure to State a Claim (Docket Entry No. 22) is **DENIED** as **MOOT**. JPMorgan Chase Bank, N.A.'s Motion to Strike or, Alternatively, Objections to the Affidavit of Diane Werlein Gilliam (Docket Entry No. 35) is **DENIED** as **MOOT**. Plaintiffs' Motion to Strike Objections and Answers of Defendant JP Morgan Chase Bank, N.A. (Docket Entry No. 36) is **DENIED**.

**SIGNED** at Houston, Texas, on this the 27th day of June, 2019.

SIM LAKE
UNITED STATES DISTRICT JUDGE